**In the Matter of Thomas Finley HARD-MAN, Jr. and Sylba A. Hardman, Bankrupts.**

**No. IP 60-B-338.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Dec. 14, 1960.

Robert A. Rose of Klineman & Rose, Indianapolis, Ind., for Bankrupts.

Kirkwood Yockey of Yockey & Yockey, Indianapolis, Ind., for State Court Receiver, Bloor Redding.

Charles E. Barker, Indianapolis, Ind., for Receiver in Bankruptcy.

STECKLER, Chief Judge.

This is a petition for a review of the order of August 29, 1960 of the Referee in Bankruptcy requiring petitioner, Bloor Redding, a receiver appointed by the Circuit Court of Marion County, Indiana, to turn over certain property of the bankrupts in his possession, the same being an improved lot described as Lot 1 in Clearview Estates Addition, 1st Section, an addition in Marion County, Indiana, commonly known as 6120 Cooper Road, Indianapolis, Indiana.

The pertinent facts are these. On June 10, 1960, McCormick Lumber Company, Inc. filed an action in the Circuit Court of Marion County, Indiana, in Cause No. C-60-674, against Thomas Hardman and Sylba Hardman, husband and wife, the bankrupts herein, and others, to foreclose a mechanic's lien recorded January 29, 1960 in the office of the Recorder of Marion County, Indiana, against the property in question. On June 29, 1960, Bloor Redding was appointed receiver of the property by order of the said Circuit Court of Marion County. Appraisers were appointed and Redding secured vandalism and fire insurance on the property. (The record does not disclose the date, but petitioner's brief states June 29, 1960.) On June 30, 1960, the appraisers in the state court filed their report, appraising the property at $16,500.00. On July 1, 1960, the Speedway State Bank petitioned and was allowed to intervene as a defendant in order to protect a mortgage on the property which it held and which was recorded February 29, 1960. On July 11, 1960, the Hardmans filed their voluntary petitions in bankruptcy. On July 18, 1960, Redding received a proposition to buy the property. On the same date, this court appointed Douglass

R. Shortridge receiver in bankruptcy. Shortridge qualified as receiver on July 21, 1960, and filed his petition for a turn over order directed to Redding. The turn over order was signed by the referee on August 29, 1960, after a hearing on August 9th and 10th. Bloor Redding, aggrieved by that order, timely filed his petition for review on September 7, 1960.

Thus, when the petitions in bankruptcy were filed, the state court receiver had taken possession of the property, the state court appraisers had reported, and insurance had been procured. As of that time, however, there had been no judgment of foreclosure or establishment of the validity of the liens. Whether the proposition was obtained contrary to § 69, sub. d of the Bankruptcy Act (11 U.S.C.A. § 109, sub. d) depends upon whether the state court receiver had knowledge of the bankruptcy proceeding at the time. Section 69, sub. d provides that after the filing of a petition in bankruptcy, the non-bankruptcy receiver is accountable to the bankruptcy court and cannot act with respect to the property without authorization of the bankruptcy court after knowledge of the filing of the petition. Section 70, sub. a of the Bankruptcy Act (11 U.S.C.A. § 110, sub. a) provides that upon the qualification of the trustee in bankruptcy, he takes title to all property of the bankrupt as of the date of bankruptcy, and that "the title of the trustee shall not be affected by the prior possession of a receiver or officer of any court."

Section 2, sub. a(21) of the Bankruptcy Act (11 U.S.C.A. § 11, sub. a(21)) provides that the bankruptcy courts have jurisdiction in law and equity to "require receivers * * * appointed in proceedings not under this title * * * to deliver the property in their possession or under their control to the receiver or trustee appointed under this title * * *."

Section 67, sub. a(1), formerly § 67, sub. f, of the Act (11 U.S.C.A. § 107, sub. a(1)) provides:

"Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title * * *."

The question therefore, is whether the referee has power by summary procedure to order a receiver, appointed by a state court in conjunction with an action to foreclose a lien obtained more than four months prior to bankruptcy to turn over the encumbered property to the receiver or trustee in bankruptcy, when the lien is not avoided by the Bankruptcy Act and the state court action was commenced prior to bankruptcy, but within four months thereof.

The referee in his certification states that he acted under the authority of § 69, sub. d (11 U.S.C.A. § 109, sub. d) in conjunction with § 70, sub. a (11 U.S.C.A. § 110, sub. a). Section 69, sub. d (11 U.S.C.A. § 109, sub. d) merely makes a non-bankruptcy receiver or trustee subject to an accounting and control by the bankruptcy court, but the application of this section has its limitations where the state court proceeding is other than a mere winding up of the affairs of an insolvent corporation.

In In re Watts, 190 U.S. 1, at page 31, 23 S.Ct. 718, at page 726, 47 L.Ed. 933, the Supreme Court stated:

"We do not understand it to be contended that the passage of the bankruptcy act in itself suspended the statute of Indiana in relation to the appointment of receivers, but only that when the proceedings for such appointment took the form * * * of winding up the affairs of the insolvent corporation, the proceedings in bankruptcy displaced those in the state court and terminated the jurisdiction of the latter."

Thus, the fine distinction lies between those cases in the state courts involving possession in enforcement of pre-existing liens, and cases involving insolvency proceedings or general winding up receiverships.

■ At page 27 of 190 U.S., at page 724 of 23 S.Ct. in In re Watts, supra, the court said:

"And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the Federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons or corporations, is essentially exclusive. Necessarily, when like proceedings in state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in possession of the state courts. Such cases are not cases of adverse possession, or possession in enforcement of pre-existing liens, or in aid of the bankruptcy proceeding. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit, but that rule can have only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent."

This is merely a statement of the well settled principle that a general winding up receivership is tantamount to an insolvency proceeding which will be superseded by bankruptcy if the petition in bankruptcy is filed within four months of the appointment of the receiver.

In the case at bar, we are not confronted with a foreclosure action commenced in another court *after* the petition in bankruptcy. Cf. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. In such cases the injunctive power of the bankruptcy court will be exercised to stay the foreclosure proceedings, for the bankrupt's estate is considered *in custodia legis* from the time the petition is filed. And the implication may be drawn from the decision in the Isaacs case that a foreclosure proceeding, though commenced before the petition in bankruptcy, would be without validity unless the bankruptcy court consented thereto. But the fear of excessive interference with state court proceedings brought prior to bankruptcy to enforce valid liens, which has been engendered by the Isaacs decision, has been effectively dissipated by the Supreme Court in the case of Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 470, 75 L.Ed. 1060. In that case, the trustee in bankruptcy and two mortgagees obtained an order in the bankruptcy court enjoining commissioners appointed by a state court from proceeding with the sale of certain real estate of the bankrupt pursuant to a decree of the state court. The suit in the state court was a creditors' suit and had been commenced more than five and one-half months before the petition in bankruptcy to enforce a lien obtained by a judgment which had been docketed and had become a lien on the debtor's real estate sixteen months before bankruptcy. After acknowledging the effect of the petition in bankruptcy, the Supreme Court went on to disapprove those "few cases which have held that the bankruptcy court may enjoin proceedings brought prior to the filing of the petition to enforce valid liens which are more than four months old at the date of bankruptcy." The court further stated,

"* * * the Federal courts have with practical unanimity held that where a judgment which constitutes a lien on the debtor's real estate is recovered more than four months prior to the filing of the petition, the bankruptcy court is without jurisdiction to enjoin the prosecution

of the creditor's action, instituted prior to the filing of a petition in bankruptcy, to bring about a judicial sale of the real estate."

With respect to *in rem* actions against a bankrupt's property where the proceedings is commenced before the filing of the bankruptcy petition, it is stated in 1 Collier, Bankruptcy (14th ed.) ¶ 2.63, p. 293:

> "Proceedings instituted before bankruptcy against the bankrupt's property involve many different types of suits. Some actions are brought to create liens on the property; others are commenced in order to enforce liens already acquired either by prior legal proceedings or by contract, operation of law or other non-procedural means. As stated elsewhere, the bankrupt's estate is considered *in custodia legis* from the time the petition is filed, and a proceeding begun against the property after that time may be enjoined."

At page 294, the authors go on to point out that—

> "[W]here the proceeeding, however, has been commenced prior to bankruptcy, the principal consideration is whether or not there is a valid lien already effected to which the proceeding relates."

After quoting § 67, sub. a of the Bankruptcy Act (11 U.S.C.A. § 107, sub. a), Collier states:

> "It is clear, therefore, that legal or equitable proceedings either to create or enforce a lien invalid under § 67a will not be allowed to continue after the filing of the petition. Applicable local law is determinative of the time of effecting a lien. With this in view, garnishment proceedings instituted prior to the four-month period have been generally held to create no valid lien upon wages earned within the period. And the continuation of a non-bankruptcy receivership, created within the four-month period, may be

stayed if it falls within the proscription of § 67a and § 2a(21)."

However, this authority cautions that it should be noted that under the terms of § 67, sub. a(4) (11 U.S.C.A. § 107, sub. a(4)), the bankruptcy court has summary jurisdiction of any proceeding by the trustee or debtor to hear and determine the rights of any parties under § 67, sub. a. "It is possible, therefore, that a temporary injunction may be given under § 67(a) (4) to enable the bankruptcy court to determine whether the lien was obtained within the four-month period and is of the type invalidated by § 67; if it so determines, a proceeding to enforce the lien could be permanently enjoined." Id. at p. 297–298.

In point in this regard are the two Lustron cases which were decided by our own Court of Appeals, viz.: In re Lustron Corp., 7 Cir., 1950, 184 F.2d 789, 798. In these two cases the court recognized the distinction between a prior state court action to establish and foreclose liens not invalidated by the Bankruptcy Act, and a prior state court insolvency proceeding involving general assets not subject to liens. In the first case, where a creditor, the Reconstruction Finance Corporation, was proceeding in a federal district court, other than the bankruptcy court, to foreclose mortgages on the property, the Court of Appeals held that the bankruptcy court properly issued a restraining order preventing further proceedings in the foreclosure suit. The court said at page 796:

> "We do not intend to imply that if the liens of RFC are valid under the laws of Ohio, the bankrupt estate has any interest in the mortgaged property; in such case, obviously, the bankruptcy court will not interfere with the foreclosure proceeding. But the order is not a final or permanent injunction against the proceeding in Ohio; it * * * obviously is intended to maintain the existing status in order to permit the trustees reasonable time and opportunity to

investigate all questions as to validity of the liens and to give the court the opportunity to decide whether the trustees shall be directed to intervene in the foreclosure proceedings in order thereby to set up the invalidity of the liens, or whether other relief shall be granted."

In the second Lustron case, supra, the Court of Appeals held that as to general assets, not encumbered by liens antedating bankruptcy by more than four months, the bankruptcy court's jurisdiction was paramount and exclusive, even though the assets were in the hands of another court's receiver.

From the evidence before the referee, it is apparent that other mechanics liens were filed against this property within the four months before bankruptcy. Assuming for illustration that foreclosure proceedings had been commenced before bankruptcy and within the four-month period, 1 Collier, Bankruptcy, supra, at p. 299 states:

"In this connection, it should be observed that the validity of liens obtained through means *other* than legal or equitable proceedings does not depend on their creation within or without the four-month period, since § 67a only invalidates liens obtained through legal or equitable proceedings within the four-month period. The question before the bankruptcy court upon a prayer for injunction, therefore, is whether or not the enforcement proceedings have progressed far enough to prevent the custody of the property from passing to the bankruptcy court when the petition is filed. It is now the weight of authority that the mere institution of the proceedings prior to bankruptcy is sufficient for this purpose. Accordingly, where a state foreclosure suit or other enforcement proceeding, based on a valid lien, is commenced before the filing of the bankruptcy petition, the state court may proceed to judgment, sell the property and distribute the proceeds.

And this well settled rule is not altered by § 2a(21) of the Act." (References to footnote case citations omitted.)

The court thus concludes that the authorization for the referee's order of August 29, 1960, must come, if at all, from § 2, sub. a(21) (11 U.S.C.A. § 11, sub. a(21)). But based upon the authorities herein cited, the referee, in view of the established record, overextended his authority by entering the turn over order as to the specific property in question, against which the lien existed before the four-month period and with respect to which the foreclosure proceeding had been commenced before the filing of the bankruptcy petitions.

It Is Therefore Ordered, That the referee's order of August 29, 1960, be vacated, and that the administration of the bankruptcy estate proceed in conformity with the conclusion expressed herein.